UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| DESMOND HODGES**,** *et al.,* individually, and on behalf of all others similarly situated, | Case No.: 3:21-cv-00041-TCB |
| Plaintiffs, vs. | |
| OSMOSE UTILITIES SERVICES, INC.**,** | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES, LITIGATION AND <u>ADMINISTRATIVE COSTS AND INCORPORATED BRIEF IN SUPPORT</u>**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ……………………………………………………..1

   A. Background of the Lawsuit and Plaintiffs' Claims ………………………….2

   B. Summary of the Settlement Terms ………………………………………..5

   C. The Notice Process ……………………………………………………..5

II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, ADEQUATE, AND SHOULD BE APPROVED BY THE COURT ………………………..6

   A. The Proposed Settlement Is a Fair Compromise in Light of The Strength of Plaintiffs' Claims ……………………………………………………………8

   B. Litigation Through Trial Would Be Complex, Costly, and Long …………..11

   C. The Reaction of the Class Has Been Positive ………………………………13

   D. The Agreement Was Negotiated at Arm's Length by and Is Endorsed by Competent Counsel for Both Parties ………………………………………14

   E. The Stage of Proceedings and Amount of Discovery Completed …………..16

   F. Range of Possible Recovery and Range at Which Settlement is Fair ……….16

   G. The Remaining Rule 23(e)(2) Factors Support Approval …………………..18

III.  THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ……………………………………………………………..21

IV.   THE ADDITIONAL CONSIDERATION IN EXCHANGE FOR THE GENERAL RELEASE SHOULD BE APPROVED ……………………….22

V.    ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED AS FAIR AND REASONABLE …………………………………………………..25

   A. The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts ……………………………………………………...27

B.  Application of the *Camden I* Factors Supports the Requested Fee …………28

    1.  Achieving the Settlement Required Substantial Time and Labor ………29

    2.  The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys …………………………………………...31

    3.  Class Counsel Achieved an Excellent Result …………………………...33

    4.  The Claims Presented Serious Risk ……………………………………..34

    5.  Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded from Other Employment as a Result …………………………………………………………………35

    6.  The Requested Fee Comports with Fees Awarded in Similar Cases …….36

    7.  The Remaining *Camden I* Factors Also Favor Approving the Requested Fee …………………………………………………………………...38

C.  The Expense Requested Is Appropriate ……………………………………39

D.  The Settlement Administration Fee Should Be Awarded …………………..39

VI.    CONCLUSION …………………………………………………………40

Plaintiffs, Demar Bennett, Timothy Corvin, Khalif Davis-Harris, Desmond Hodges, Wayne Hurst, Allen Miller, Caleb Ross, Jose Terriquez, Aaron Tutt, and Gregory Weaver (collectively referred to as "Plaintiffs"), on behalf of themselves and all others similarly situated, without objection from Defendant Osmose Utilities Services, Inc. ("Defendant"), and without objection from any Settlement Class Members, respectfully submit the Parties' proposed $3,375,000 Settlement (the "Settlement") for the Court's final approval.

## I.   **INTRODUCTION**

Pursuant to the Court's Preliminary Approval Order [ECF No. 156], the Parties disseminated notices of the Settlement to the 8,480 Settlement Class Members.[1] Of the 8,480 notices sent, 548 notices have remained classified as undeliverable. Of the 8,480 Settlement Class Members that received notices, 941 persons (11.09%) have elected to participate in the Settlement, either by previously submitting consent forms (in the case of Settlement Collective Members), and/or by submitting Claim Forms since the preliminary approval of this Settlement. No Settlement Class Members opted-out and no Settlement Class Members provided an objection to the Settlement. Additionally, 2,954 people have opted into this action as Collective Members. The 941 Settlement Class Members and the 2,954

---

[1] Any capitalized terms not defined herein have the meaning ascribed to them in the Collective and Class Action Settlement Agreement and Release (the "Settlement"), which was filed as ECF No. 152.

1

Settlement Collective Members are the "Authorized Claimants." If the Court grants final approval of the Settlement, a total of 3,895 Authorized Claimants will receive at least $941,059.83 from the Settlement Fund.

The Parties now seek an order: (1) approving as fair and adequate the class-wide $3,375,000 settlement of this action as set forth in the Settlement previously filed as ECF No. 152; (2) finally certifying this case as a Rule 23 class action for settlement purposes; and (3) approving the additional compensation ($10,000.00) to the Named Plaintiff Desmond Hodges in exchange for his general release of claims, Class Counsel's attorneys' fees ($1,125,000.00) and litigation costs ($51,250.00), and CAC Services Group, LLC's ("CAC") estimated settlement administration costs ($33,328.90).

## A. Background of the Lawsuit and Plaintiffs' Claims

On or about March 18, 2021, Plaintiff Desmond Hodges filed this action against Defendant on behalf of himself and others similarly situated for alleged failures to pay straight-time and overtime premium payments for all hours worked under the Fair Labor Standards Act ("FLSA") and Massachusetts General Laws c. 149, 148 and 15, and c. 151 1A and 20 ("Massachusetts Wage Acts").

On or about October 29, 2021, the Parties mediated before Carlos Burruezo, an experienced wage and hour class and collective action mediator with Burruezo &

Burruezo, PLLC. The Parties were not able to reach a successful resolution at that time. *See* Declaration of Edmund C. Celiesius ("Celiesius Decl."), ¶ 4.

Between December 22, 2021, and April 22, 2022, the Parties engaged in substantial discovery, including production of more than 5,000 pages of documents, exchange of more than 100 sworn witness declarations, and depositions of 27 Members of the Settlement Collective. *Id.* ¶ 5.

On or about June 2, 2022, Plaintiff Desmond Hodges filed his Motion for Conditional Certification of a Collective Action Under the FLSA, which the Court granted on September 13, 2022, and conditionally certified a collective consisting of Crew Members who worked in PIT and/or PR crews within the three (3) years preceding conditional certification (or within three years of their opt-in date, for those who have already joined), in order to collectively pursue claims under the FLSA, alleging that they were not paid for hours in excess of forty (40) in a workweek spent (1) traveling between their residences and motels and/or job sites; (2) performing work at the motel and then travelling to the job site; and/or (3) travelling from the job site to the motel and then performing work at the motel. *See* ECF No. 109; *see also* Celiesius Dec., ¶ 6.

On or about December 7, 2022, Simpluris, Inc., a claims administrator, issued notices of the Action to all putative collective members with a deadline to opt-in to the Action by filing their Consent to Sue forms with the Court on or before February

6, 2023. To date, 2,954 persons have filed Consent to Sue forms. *See* Celiesius Decl., ¶ 7.

On or about March 8, 2023, after the close of the opt-in period, Plaintiffs filed an Amended Complaint against Defendant on behalf of themselves and others similarly situated for alleged failures to pay straight-time and overtime premium payments for all hours worked under the FLSA, Massachusetts Wage Acts, and the wage-and-hour laws of Arkansas, California, Colorado, Connecticut, District of Columbia, Hawaii, Illinois, Kentucky, Maine, Maryland, Minnesota, Missouri, Nevada, New Jersey, New York, Ohio, Oregon, Pennsylvania, Virginia, Washington, and Wisconsin. *See* ECF No. 129.

On or about May 4, 2023, the Parties mediated before Michael Russell, an experienced wage and hour class and collective action mediator with Miles Mediation & Arbitration, LLC. *See* Celiesius Decl., ¶ 8. Prior to mediation, Defendant produced additional detailed payroll and timekeeping records which, along with data for the putative collective produced in preparation for the first mediation, enabled Plaintiffs' counsel to perform a logical estimate of the potentially recoverable damages on behalf of Plaintiffs, the Settlement Collective Members, and the Settlement Class Members. *Id*. Although the Parties were unable to reach a successful resolution at the second mediation, on or about May 15, 2023, they agreed in principle to a mediator's proposal for a Gross Settlement Amount, but still were

at odds regarding certain other settlement terms. *Id*. Thereafter, on or about July 25, 2023, the Parties held an additional mediation session with Mr. Russell in which they negotiated and agreed upon the terms of a final settlement of the Action as set forth within this Agreement. *Id*.

### B. Summary of the Settlement Terms

The terms of the Parties' Settlement detailed in Plaintiffs' Unopposed Motion for Preliminary Approval [ECF No. 153] remain and are incorporated herein.

### C. The Notice Process

Pursuant to the Court's Preliminary Approval Order, the Claims Administrator CAC: (i) sent the Court-approved Notice Packets to the 8,480 Settlement Class and Collective Members; (ii) mailed a notice to the Attorney General of the United States and the Attorney General of each other state where Class Members reside according to Defendant's records in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *See* **Exhibit 1**, Declaration of Jeffrey D. Johnson Regarding Notice and Settlement Administration ("Johnson Decl.,"), ¶¶ 5-7. The Notice packets sent by CAC to the 8,480 Settlement Class Members advised recipients that any requests for exclusion or objections would need to be postmarked by November 22, 2023. *Id.* at **Exhibit 1**.

As of this date, CAC has received 941 timely, valid Claim Forms, forty-three (43) late Claim Forms; no Requests for Exclusion or objections have been received.

*Id.* at ¶¶ 13-15. In addition to the 941 Settlement Class Members who submitted Claim Forms, 2,954 Settlement Collective Members who already qualify as Participating Class Members will also receive their shares of the Settlement Collective Fund, if the Settlement is approved. *Id.* at ¶ 7. These Settlement Class Members will receive at least $166,059.83 from the Settlement Fund. *Id.* at ¶ 16. In addition, the 2,954 Collective Members will receive $775,000.00 from the Settlement Fund. *Id.* at ¶ 17. In total, at least $941,059.83 of the Settlement Fund will be disbursed to all Authorized Claimants.

## II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, ADEQUATE, AND SHOULD BE APPROVED BY THE COURT

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see George v. Acad. Mrtg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019) (citing *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994)). In general, settlement of class actions is favored as a matter of "strong judicial policy." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

In determining whether a proposed settlement is fair, reasonable, and adequate, courts are to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2).

The Eleventh Circuit has identified six (6) factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the state of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recover; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennet v. Behring Corp*, 737 F.3d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam v. Clorazepate Antitrust Litig.*, 2003 U.S. Dist. LEXIS 12344, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)).

**A. The Proposed Settlement Is a Fair Compromise in Light of The Strength of Plaintiffs' Claims**

The Parties have agreed to settle this case for a maximum amount of $3,375,000.00. This Settlement represents significant value to thousands of Crew Members, especially given the inherent risks and uncertainties of litigation. Weighing the benefits of this Settlement against the available evidence and the risks and uncertainties associated with various proceedings in the litigation, the settlement provides an amount that is certain and reasonable for the Settlement Class Members.

Based on the extensive time and payroll data Defendant produced, Class Counsel estimates that the 2,954 Settlement Collective Members will receive shares of the $775,000 Settlement Collective Fund, which is roughly equivalent to the total estimated overtime wages they would stand to recover if they were proven to have worked an average of 12.75 unpaid minutes per shift throughout the FLSA's three-year recovery period. *See* Celiesius Decl., ¶ 10. Additionally, the Absent Settlement Class Members were eligible to receive shares of the Settlement Class Fund. The Settlement Class Fund is $1,367,571.15, and is roughly equivalent to 75% the total estimated overtime wages ($1,840,281.34) they would stand to recover if they were proven to have worked an average of 12.75 unpaid minutes per shift within the period of September 13, 2019 through May 5, 2023. *Id*. While Plaintiffs alleged entitlement to more than 12.75 minutes of unpaid time per day and also sought liquidated damages in addition to wages, the recovery provided under the Settlement

is outstanding when balanced against the multitude of risks Plaintiffs would have to overcome to recover similar or greater amounts through contested litigation.

Plaintiffs claim that Defendant failed as a matter of policy to pay Crew Members in PIT and PR crews for: (1) time spent performing work at company-provided motels in the morning, such as cleaning, loading, and organizing work vehicles, disposing of job site debris, preparing ice buckets for chemicals, and attending meeting, as well as directly subsequent time spent driving or riding to the job site; (2) time spent performing work at company-provided motels in the afternoon/evening, such as cleaning, loading, and organizing work vehicles, disposing of job site debris, as well as directly preceding time spent driving or riding from the job site back to the motel (collectively with number 1, "Daily Travel Claims"); and (3) time spent traveling from their homes to areas in which their motels and job sites are located, and/or from such areas back to their homes ("Overnight Travel Claims"). Plaintiffs rely on 29 C.F.R. § 785.38 and the "continuous workday" rule in arguing that the activities comprising their Daily Travel Claims are compensable under the FLSA and state laws, and rely on 29 C.F.R. § 785.39 for the compensability of the time underlying their Overnight Travel Claims.

In denying and disputing Plaintiffs' claims, Defendant maintained that (a) decertification of the collective is proper because the Named and Opt-in Plaintiffs

are not "similarly situated under 29 U.S.C. § 216(b); (b) certification of the proposed state law classes would be unmanageable and thus improper under Rule 23; (c) Plaintiffs cannot prove by a preponderance of the evidence that they or other Crew Members performed tasks underlying their Daily Travel Claims as frequently or for as much time as Plaintiffs allege; (d) Plaintiffs cannot prove by a preponderance of the evidence that they were not paid for the tasks and travel time underlying their Daily Travel Claims, or for their initial trips from their homes to the areas in which their motels and job sites were located; (e) the FLSA and state laws do not require Defendant to pay Crew Members for the tasks or travel time underlying their Daily Travel Claims (for reasons including that such tasks are *de minimis* and not integral or indispensable to Crew Members' primary job duties), or for time spent on trips to/from home that Crew Members make despite having the option to stay at company-provided motels; (f) even if Plaintiffs can prove that they or other Crew Members were not paid for tasks and travel as alleged in their daily Travel Claims and Overnight Claims, and that such tasks and travel are compensable, Plaintiffs cannot prove that Defendant had actual or constructive knowledge of such non-payments (as is required for liability) or that they amount to a willful violation of the FLSA (which is required to increase the FLSA's statute of limitations from 2 year to 3), and Defendant can prove that it made good faith efforts to comply with the

10

FLSA (which is sufficient for Defendant to avoid liquidated damages). *See* Celiesius Decl., ¶ 12.

Defendant provided evidentiary support for its argument, including over 100 declarations from Crew Members and Foreman as daily time sheets for Opt-in Plaintiffs showing they were often paid for "non-productive" time. *Id.* at ¶ 12. Plaintiffs' ability to counter such testimony is impeded by the fact that the motel work underlying their Daily Travel Claims is not reflected on their or other Crew Members' daily time sheets, and they are not aware of any other documentary evidence reflecting the specific dates on which they performed such work or the amount of time they spent performing them, even though they did perform those work. *Id.* Thus the key issues of whether such tasks are *de minimis* and the amount of wages Crew Members are owed based on the performance of any such tasks would likely require credibility determinations involving hundreds of competing witnesses. *Id.*

Accordingly, the Settlement Class Members are assured a significant and immediate recovery by settling these claims, instead of going through a prolonged, expensive litigation with risks and uncertainties.

**B. Litigation Through Trial Would Be Complex, Costly, and Long**

The second factor to be considered by a court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *See, e.g.,*

*Martinez v. Hospitality*, 2017 U.S. Dist. LEXIS 232629, at *2 (N.D. Ga. Jan. 27, 2017). Typically, the inherent nature of FLSA claims involves complex mixed questions of fact and law. *See Barrentine v. Arkansas-Best Freight Sys. Inc.*, 405 U.S. 728, 743 (1981). The instant action not only involves alleged FLSA violations, but also includes alleged wage and hour violations under Arkansas, California, Colorado, Connecticut, District of Columbia, Hawaii, Illinois, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Jersey, New York, Ohio, Oregon, Pennsylvania, Virginia, Washington, and Wisconsin law. *See George*, 369 F. Supp. 3d at 1370 (finding FLSA and state wage and hour law claims and defenses are complex; litigating them would be both difficult and time consuming).

Absent settlement, Defendant would continue to vigorously defend the case. Additionally, considerably more discovery would be required resulting in significant attorneys' fees and costs that would be expended by all Parties in investigating the claims further. Further, a continued litigation would certainly result in more depositions of employees, motions for decertification, contested motions for class certification, dispositive motions, and more Court hearings. Additional litigation would increase expenses on both sides while not reduce the risks and uncertainties of litigation to the Settlement Class Members. In sum, the remaining burden, expenses, and risks for the Settlement Class Members would be substantial as

continued litigation of complex issues in this case would require considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

### C. The Reaction of the Class Has Been Positive

The Settlement Class Members have reacted positively to the Settlement. None of the Settlement Class Members have objected to the Settlement so far. *See* Celiesius Decl., ¶ 13. In addition, although the notice process made it clear that each Settlement Class Member was free to exclude themselves from the Settlement so they could pursue their claims individually, none have done so. *Id*. This factor strongly militates in favor of approving the Settlement.

Of the 8,480 Settlement Class Members, 941 persons (11.09%) have elected to participate in the settlement, either by previously submitted consent forms and/or by submitting Claim Forms. *See Cook v. Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 111956, at *23 (M.D. Fla. June 22, 2020) (noting that a claims rate of approximately 25.3% is significant and exceeds the claims rate in the overwhelming majority of similarly-constructed settlements); *Poertner v. Gillete Co.*, 618 Fed. Appx. 624 (11th Cir. 2015) (confirming approval of class settlement with less than 1% claims rate); *Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762,

at \*14 (N.D. Fla. Oct. 24, 2014) (noting that even a low claims rate for claims made structure does not impact the fairness, reasonableness, or adequacy of proposed settlement); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1337 (S.D. Fla. 2007) (approval of settlement when 1.1% of class members returned claims forms); *Moore v. Verizon Commc'n Inc.*, 2013 U.S. Dist. LEXIS 170027, at \*8 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate). Hence, this Settlement should be approved by the Court.

### D. The Agreement Was Negotiated at Arm's Length by and Is Endorsed by Competent Counsel for Both Parties

In determining whether a settlement was reached absent any fraud or collusion, courts examine the negotiating process to determine whether the compromise was the result of arms-length bargaining between the parties. *See Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (citing *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga. 1993)). Where a settlement is achieved through arms-length negotiations with the assistance of a mediator, such evidence supports the settlement was reached without collusion. *See Pinon v. Daimler AG*, 2021 U.S. Dist. LEXIS 249510, at \*19 (N.D. Ga. Nov. 30, 2021) (noting the close participation of a former United States District Judge in multiple mediation sessions supports the procedural fairness of the settlement agreement); *see Ingram*, 200 F.R.D. at 693 ("The fact that the entire mediation was

conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion.").

Counsel for both sides are experienced in employment litigation. Class Counsel, Brown, LLC, has substantial experience in employment litigation and wage and hour class and collective action litigation. *See* Celiesius Decl., ¶¶ 17-20 (citing firm resume). Defendant's counsel is also experienced and accomplished in the labor and employment law practice. Counsel for both Parties submit this settlement is fair and reasonable. More importantly, the parties through counsel conducted extensive discovery and three (3) mediation sessions in total, with two (2) different mediators before reaching the agreed Settlement. The parties had one (1) mediation session in 2021 and two (2) mediation sessions this year. The Settlement is the product of arm's length negotiations. This factor weighs heavily in favor of final approval. *See Ingram* 200 F.R.D. at 691; *see also Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989) ("affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (noting that courts are cautioned to "not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel").

### E.  The Stage of Proceedings and Amount of Discovery Completed

This case was heavily contested for more than two (2) years. In December 2022, a Court-approved notice was sent to all putative collective members, which resulted in a total of 2,954 Plaintiffs opting in the case, many of whom provided counsel with information that bore significantly on their evaluation of the case's strengths and weaknesses. *See* Celiesius Decl., ¶¶ 7, 23, 27-28. The parties engaged in written discovery, motion practice, and conducted 27 depositions. *Id.* at ¶¶ 5, 22-23. In advance of the mediation, Plaintiffs' counsel reviewed, analyzed, and synthesized payroll data supplied by Defendants for Plaintiff, Settlement Collective Members, and Settlement Class Members in order to create a damage model for purposes of the mediation. *Id.* at ¶¶ 8, 22-23, 27-28. A detailed damage model was prepared and reviewed throughout the mediation which allowed Plaintiffs to negotiate based on an objective understanding of the potential damages the class stood to recover. *Id.*

### F.  Range of Possible Recovery and Range at Which Settlement is Fair

The relief sought in the Settlement is reasonable and within the range of recovery available under the FLSA and state wage-and-hour laws of Arkansas, California, Colorado, Connecticut, District of Columbia, Hawaii, Illinois, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Jersey, New York, Ohio, Oregon, Pennsylvania, Virginia, Washington, and Wisconsin. As noted

above, the 2,954 Settlement Collective Members will receive roughly the equivalent to the total estimated overtime wages they would stand to recover if they were proven to have worked an average of 12.75 unpaid minutes per shift throughout the FLSA's three-year recovery period. *See* Celiesius Decl., ¶ 10. Additionally, the Settlement Class Members will receive shares of the Settlement Fund, which is estimated to be approximately 75% the total estimated overtime wages they would stand to recover if they were proven to have worked an average of 12.75 unpaid minutes per shift within the period of September 13, 2019 through May 5, 2023. *Id.*

Indeed, the outcome of this action compares favorably with amounts received by employees in similar lawsuits. *See Turner v. Concentrix Servs. US, Inc.*, 2023 U.S. Dist. LEXIS 5117 (W.D. Ark. Jan. 11, 2023) (approving settlement that provided recovery of approximately 35 minutes of off-the-clock work performed per week using the average hourly base rate of pay of all plaintiffs); *Howard v. Web.com Grp. Inc.*, 2020 U.S. Dist. LEXIS 256933, at *15 (D. Ariz. Sep. 18, 2020) (approving settlement that provided recovery of approximately 15 to 20 minutes of unpaid start-up time for each week worked); *Quintana v. HealthPlanOne LLC*, 2019 U.S. Dist. LEIXS 124017, at *9 (D. Ariz. July 24, 2019) (approving settlement that provided recovery of about 5 minutes of unpaid work per day, or 25 minutes of unpaid time per week).

**G. The Remaining Rule 23(e)(2) Factors Support Approval**

Based on the foregoing reasons, the Court should find that the final approval of the Settlement is appropriate under Rule 23(e)(2)(A), (B), and (C)(i).

In addition, final approval is appropriate under Rule 23(e)(2)(C)(ii) because the proposed method of distributing relief to the class, *i.e.*, mailing settlement checks to their last-known addresses as reported on their Claim Forms and/or by Class Counsel, is effective. Likewise, the claims process is not burdensome, as evidenced by the submission of 941 Claim Forms. Rule 23(e)(2)(C)(iii) is satisfied because the proposed attorneys' fees, as argued herein, are fair and reasonable, and to the extent approved, will be paid at the same time that the settlement payments are mailed to Authorized Claimants. *Settlement*, § 48. Aside from the Settlement and Exhibits thereto, there are no other agreements between the parties, for purposes of Rule 23(e)(2)(C)(iv).

Finally, the Settlement treats the Settlement Collective Members and Settlement Class Members equitably, for purposes of Rule 23(e)(2)(D), by allocating the Settlement Fund according to the potential damages owed to the Settlement Collective Members and Settlement Class Members, respectively, based on the number of weeks each Member was employed by Osmose Utilities Services, Inc. and/or an acquired predecessor company. *Settlement*, §§ 38(a), (b).

**H. Approval of the FLSA Settlement Is Appropriate Under the FLSA**

Plaintiffs also request that the Court grant final approval of the collective settlement of the FLSA claims for the 2,954 Settlement Collective Members, most of whom joined after the Court conditionally certified this action, [ECF No.109] and allowed a Court-approved notice to be sent to all potential collective members. Unlike the Rule 23 class mechanism, a collective member must affirmatively opt into the litigation in order to join it as a plaintiff. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 class actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, the higher standard for approval of a class action under Rule 23 does not apply to an FLSA collective settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353-54. If the proposed settlement reflects a reasonable

compromise over contested issues, the court should approve the settlement. *Id.* at 1354.

Here, the Settlement was the result of extensive litigation, discovery, and arms-length negotiations – three (3) mediation sessions involving vigorous back and forth with the assistance of well-respected and experienced class and collective action mediators. *See* Celiesius Decl., ¶¶ 4-5, 8, 14, 22-23, 27-29. During this litigation, the Plaintiffs, Settlement Collective Members, and Defendant have been represented by counsel experienced in wage and hour law class and collective action practices and litigations. During the extensive litigation and arms-length negotiations, Defendant continued to deny Plaintiffs' claims and contest that the Named and Opt-in Plaintiffs are not similarly situated under 29 U.S.C. § 216(b); Plaintiffs cannot prove that they or other Crew Members performed tasks underlying their Daily Travel Claims as frequently or for as much time as Plaintiffs allege; Plaintiffs cannot prove that they were not paid for the tasks and travel time underlying their Daily Travel Claims, or for their initial trips from their homes to the areas in which their motels and job sites were located; any Plaintiffs' alleged unpaid overtime claims are *de minimis* and not integral or indispensable to their primary job duties; and that Plaintiffs cannot prove Defendant acted willfully or in bad faith. Because the Settlement, which was obtained through arms-length negotiations,

resolves these clear and actual disputes waged in contested litigation, it should be approved by the Court.

## III.   THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

The Court's Preliminary Approval Order [ECF No. 156] preliminarily certified the Settlement Class. Plaintiffs' arguments in support of class certification were detailed in their Motion for Preliminary Approval [ECF No. 153]. Those arguments remain and Plaintiffs incorporate them herein. The Court should certify this case as a Rule 23 class for settlement purposes. *See George*, 369 F. Supp. 3d at 1373 (certifying settlement class and collective at final approval stage for same reasons that supported preliminary certification and approval).

Further, the Court should confirm its prior appointment of Nicholas Conlon, Zijian Guan, Eric Sands, and Edmund Celiesius of Brown, LLC and Roger Orlando of The Orlando Firm, P.C. as Class Counsel [ECF No.156, ¶ 7]. In determining whether to appoint class counsel under Fed. R. Civ. P. 23(g), the Court must consider the following factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

All of these factors support Class Counsel's adequacy. Class Counsel has thoroughly investigated the potential claims at issue in this action by, among other things, identifying the various theories of liability asserted in the complaint, conducting thorough interviews with the Named Plaintiffs and  other Crew Members, propounding written discovery and conducting 27 depositions, reviewing and analyzing payroll and timekeeping documents, and preparing a comprehensive damage model based on the Settlement Collective Members' and Settlement Class Members' payroll data. *See* Celiesius Decl., ¶¶ 4-5, 8, 14, 22-23, 27-29. Class Counsel Brown, LLC has extensive experience handling wage-and-hour collective and class actions, and has been appointed class counsel for Rule 23 class settlements in over ten (10) other federal actions. *Id.* at ¶¶ 17-21. Further, Brown, LLC has committed significant resources toward its representation of the class, including, by billing over 2,390 hours and advancing over $101,081.35 in costs on a wholly contingent basis. *Id.* at ¶¶ 24-25, 31.

## IV.    THE ADDITIONAL CONSIDERATION IN EXCHANGE FOR THE GENERAL RELEASE SHOULD BE APPROVED

The Court should approve the additional compensation paid to Named Plaintiff Desmond Hodges in exchange for his general release of claims.

Named Plaintiff Desmond Hodges is mindful of the Eleventh Circuit's holding in *Johnson v. NPAS Solutions, LLC*, where the court invalidated a proposed service award in a class action. *See* 975 F.3d 1244, 1255-61 (11th Cir. 2020).

22

However, the additional compensation provided to Named Plaintiff Desmond Hodges is not a service award. Rather, it is a mutual exchange between Named Plaintiff Desmond Hodges and Defendant for Named Plaintiff Desmond Hodges general release of claims, which confers benefits to each party and is distinguishable to issues considered in *Johnson*. Specifically, Named Plaintiff Desmond Hodges is receiving compensation to waive additional claims, whether known or unknown, beyond his wage-and-hour claims, and Defendant receives the benefit of abstaining liability for other potential claims Named Plaintiff Desmond Hodges may have against Defendant.

Indeed, courts have easily distinguished *Johnson* in finding that additional consideration is warranted for a plaintiff who releases additional claims. *See, e.g., Morrison v. Fleetcor Technologies Operating Company, LLC, et al.*, No. 1:21-cv-03950-TWT (N.D.G.A. Sept. 1, 2023); *Broughton v. Payroll Made Easy, Inc.*, 2021 U.S. Dist. LEXIS 139514, at *8 & n.5, 21-22 (M.D. Fla. July 27, 2021) (granting preliminary approval of settlement in which the named plaintiff would "receive $5,000.00 as consideration for his agreement to execute a general release," even though the settlement agreement contained references to a "service award"); *see also Tweedie v. Waste Pro of Fla., Inc.*, 2021 U.S. Dist. LEXIS 85018, at *18 n.2 (M.D. Fla. May 4, 2021), *rept. and rec. adopted*, 2021 U.S. Dist. LEXIS 146680 (M.D.

Fla. Aug. 5, 2021) (recommending approval of "the $7,500 payment to Tweedie as consideration for execution of the General Release").

Here, the facts are distinguishable from those in *Johnson*. First, Named Plaintiff Desmond Hodges is not being provided a service award for bringing a lawsuit or providing his time participation in this lawsuit. Rather, he is providing a release beyond that of the Settlement Collective Members and Settlement Class Members in the form of a general release of claims, in exchange for additional consideration for such release. Second, the additional consideration exchanged for Named Plaintiff Desmond Hodges general release is paid in addition to any portion of the Settlement Fund to which he may be eligible to receive.[2]

---

[2] *See Garcia v. Amazon.com, Inc.*, 2023 U.S. Dist. LEXIS 77577 (M.D. Fla. May 1, 2023) (approving FLSA collective settlement agreement wherein named plaintiff received additional compensation in exchange for general release); *William S. v. Progressive Select Ins. Co.*, 2023 U.S. Dist. LEXIS 58227, at *6-7 (S.D. Fla. Mar. 31, 2023) (granting final approval, including "service award" of $10,000 to each of the Class Representatives); *Junior v. Infinity Ins. Co.*, 2022 U.S. Dist. LEXIS 154082, at *5-6 (M.D. Fla. Aug. 26, 2022) (granting "service award" that was paid separately and apart from the class members, noting that the class members' recovery would not be impacted by the payment of the award); *Gibbs, et al. v. MLK Express Services, LLC, et al.*, No. 2:18-cv-434-MRM, (ECF No. 272) (M.D. Fla. June 17, 2022) (affirming an FLSA settlement agreement in a class action that contained a general release where the plaintiff was separately compensated and represented by counsel); *Martinez v. Woodvalley Landscape*, 2021 U.S. Dist. LEXIS 30908, at *4-5 n.1 (N.D. Ga. Feb. 17, 2021) (awarding service award as reasonable; noting that *Johnson* was distinguishable since it was not a Rule 23 opt-out class and the service awards were negotiated separately from the payments to the employees and did not diminish the amount that the employee received, instead, attorney's fees were reduced); *Roth v. Geico Gens. Ins. Co.*, 2020 U.S. Dist. LEXIS 188204, at *8 (S.D. Fla. Oct. 8, 2020) (noting that *Johnson* should not be extended to diversity

## V.    ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED AS FAIR AND REASONABLE

The settlement agreement provides for attorneys' fees in the amount of $1,125,000.00, which represents one third (1/3) of the $3,375,000.00 settlement fund. One third (1/3) percentage is the normal percentage recognized and granted by numerous courts in evaluating fee petitions in this type of wage and hour settlements. *See Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33-1/3% of total amount made available to class, and determining that attorneys' fees may be determined based on total fund, not just actual payout to class); *see also Poertner*, 618 Fed. Appx. at 628 ("attorney's fees awarded from a common fund shall be based on a reasonable percentage of the fund established for the benefit of the class" (quoting *Camden I Condo. Ass'n v. Dunckle*, 946 F.2d 768, 774 (11th Cir. 1991))).

---

cases where governing state law permits incentive awards, particularly when the incentive awards are to be paid separately and will not impact the recovery of any class member); *Caamal v. Shelter Mortgage Co., LLC*, 2013 U.S. Dist. LEXIS 138342, at *2-3 (M.D. Fla. Sep. 26, 2013) (finding an FLSA agreement containing a general release to be fair and reasonable where independent consideration for the release was given).

The Settlement is a "common fund" settlement. Notably, in the Eleventh Circuit, the awards of counsel fees in common-fund settlements are properly calculated as a percentage of all the benefits made available to the entire class regardless of whether each class member redeems or claims the funds made available, or even whether the unclaimed benefits revert to the defendant. *See Swaney v. Regions Bank*, 2020 U.S. Dist. LEXIS 101215, at *14-15 (N.D. Ala. June 9, 2020) (citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (holding that in determining counsel fees, the trial court erred in calculating percentage of the fund on the basis of claims actually made against the fund rather than the entire fund created by efforts of counsel)). "The members of the class, whether or not they assert their rights, are at least the equitable owners of their respective shares in recovery." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 481-82 (1980). Here, the $3,375,000.00 settlement fund is the entire fund the Defendant agreed to make available for the entire class as a result of the efforts of Class Counsel. All of the Settlement Class Members, regardless of whether they actually claimed the funds or not, are indeed "at least the equitable owners of their respective shares in recovery." *Boeing Co.*, 444 U.S. at 481-82.

26

Accordingly, the Court should analyze this fee request under *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).[3] As set forth below, in consideration of the *Camden I* factors, the Court should conclude that the requested fee is appropriate, fair, and reasonable.

### A. The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Lunsford v. Woodforest Nat'l Bank*, 2014 U.S. Dist. LEXIS 200716, at *31 (N.D. Ga. May 19, 2014) (citing *Camden I*, 946 F.2d at 771); *see also Boeing Co.*, 444 U.S. at 478; *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Adequate compensation promotes the availability of counsel for aggrieved persons. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *32.

The Eleventh Circuit held that:

the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in common fund case. Henceforth in

---

[3] *See, e.g., Duque v. 130 NE 40th St., LLC*, 2016 U.S. Dist. LEXIS 189154, at *8 (S.D. Fla. Jan. 27, 2016) (common fund settlement of hybrid Rule 23 class action/FLSA collective action requires application of *Camden I* common benefit doctrine); *see also Henderson v. 1400 Northside Drive, Inc.*, 1:13-CV-3767-TWT [ECF No. 177] (N.D. Ga. Mar. 17, 2017) (approving attorney's fees in FLSA-only collective action settlement at one-third of $1,360,000 common fund).

> this circuit, attorneys' fees awarded from a common fund shall be based
> upon a reasonable percentage of the fund established for the benefit of
> the class.

*Id.* (quoting *Camden I*, 946 F.2d at 774); *see also Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011) ("[T]he Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions."). The Eleventh Circuit holds that a court determines a reasonable fee by evaluating the appropriate fee percentage for the case rather than by conducting a lodestar analysis. *Lunsford*, 2014 U.S. LEXIS 200716, at *31-33. Hence, this Court has discretion in determining that the requested one-third (1/3) percentage of the common fund counsel fee is appropriate.

Here, the Court should find that Class Counsel are entitled to an award of one-third of the $3,375,000 Settlement Fund secured through their efforts.

**B. Application of the *Camden I* Factors Supports the Requested Fee**

The Eleventh Circuit has provided several factors that district courts should consider to determine a reasonable percentage for awarding class action counsel fees in a settlement like this:

> (1) the time and labor required;
> (2) the novelty and difficulty of the relevant questions;
> (3) the skill required to properly carry out the legal services;
> (4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by clients or the circumstances;

28

(8) the results obtained, including the amount recovered for the clients;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the clients; and
(12) fee awards in similar cases.

*Lunsford*, 2014 U.S. Dist. LEXIS 200716, at \*34 (quoting *Camden I*, 946 F.2d at 772 n.3).

### 1.  <u>Achieving the Settlement Required Substantial Time and Labor</u>

Extensive litigation, arms-length negotiations involving mediators, and ultimately settling the claims in this action, demanded considerable time and labor, supporting the reasonableness of Class Counsel's fee request. Class Counsel's contemporaneously-kept billing records reflect a total of over 2,390 hours expended on this matter, including approximately 329.5 hours by Jason T. Brown (Senior Partner), 557.6 hours by Nicholas Conlon (Partner), 9.7 hours by Zijian Guan (Partner), 5.7 hours by Patrick Almonrode (Partner), 344.6 hours by Eric Sands (Associate), 222.7 hours by Edmund C. Celiesius (Associate), 62.9 hours by Benjamin Lin (former Associate), 55.0 hours by Terrence Park (former Associate), and 812.7 hours by Brown, LLC's legal and administrative assistants. *See* Celiesius Decl., ¶¶ 24-25. Class Counsel anticipates expending additional time and resources preparing for and attending the final fairness hearing, overseeing Settlement administrating, assisting Settlement Members and answering any questions, and

tending to any issues that may arise relating to the Settlement administration. *Id.* at ¶ 26.

Class Counsel incurred significant time investigating the claims of Plaintiffs and Class Members, interviewed numerous current and former employees from various states to gather information about Defendant's time-keeping and pay practices, served written discovery, engaged in motion practice, conducted numerous depositions, analyzed payroll data of Settlement Collective Members and Absent Settlement Class Members for purposes of creating a damage model for mediation, and travelled to Atlanta, Georgia on two (2) occasions for the purpose of attending mediation, as well as holding multiple calls and a third session with the mediator to reach an ultimate resolution. *Id.*, ¶¶ 4-5, 8, 22-23, 27. The testimony, information, and data were essential to Class Counsel's ability to understand the facts, scope of claims, pertinent evidence, legal and factual arguments and potential defenses, pay practices, and policies at issue, and potential remedies available to the class. *Id.* at ¶ 28.

Class Counsel expended significant resources researching and developing the legal theories and claims presented in the instant action and creation of a damage model based on the Settlement Collective Members' and Settlement Class Members' payroll data for purposes of mediation. *Id.* at ¶¶ 4-5, 8, 22-23, 27. The process of developing the damage model ultimately stemmed from synthesizing and

constructing an Excel sheet based on timekeeping and payroll data for the Settlement Collective Members and Settlement Class Members. *Id*. This task alone resulting in considerable time expended by Class Counsel. Additionally, Class Counsel spent time preparing Plaintiffs' comprehensive mediation statement and attending the mediation.

After an agreement in principle was reached resulting in a signed term sheet, additional negotiations and discussions ensued. The negotiations of the settlement terms and Notice documents were lengthy and continued for several weeks after the Parties reached an agreement in principle on a global settlement amount. *Id*.

Accordingly, the time and resources Class Counsel devoted to this matter readily justify the requested fee.

### 2. **The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys**

Class Counsel have conferred a significant benefit on the Settlement Class on complex and highly technical wage-and-hour violations. *See Barrentine*, 405 U.S. at 743 (noting that the inherent nature of FLSA claims involves complex mixed questions of fact and law); *see also George*, 369 F. Supp. 3d at 1370 (finding that the FLSA and state wage and hour law claims and defenses are complex; litigating them would be both difficult and time consuming).

This Settlement required significant analysis of large amounts of payroll data – and the efforts of highly skilled wage and hour attorneys with experience and

expertise in wage-and-hour violations. *See* Celiesius Decl., ¶¶ 5, 8, 17-20, 22. Nuanced cases like this case also require counsel highly trained in FLSA collective action and Rule 23 class action law and procedure, which Brown, LLC possesses. *Id*. at ¶¶ 17-20. Further, this matter created a significant risk for Class Counsel given the difficulty of the highly contested issues involved. Such risks included dispositive motions filed by each side, FLSA collective action decertification, denial of Rule 23 class certification and class relief, and a potential finding by the jury that the alleged violations were not "willful" or by the judge that Defendant satisfied the "good faith" defense to liquidated damages.

Plaintiffs and the Class Members are represented by competent, experienced counsel with extensive experience in wage and hour class and collective action litigation. *Id*. In evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *39 (citing *Camden I*, 946 F.2d at 772 n.3). Throughout the litigation, Defendant was represented by capable counsel at Fisher Phillips, LLP, a nationwide law firm whose practice focuses on defending labor and employment litigations with over 500 attorneys in various states. They are highly competent and professional adversaries. *See* Celiesius Decl., ¶ 21.

### 3. **Class Counsel Achieved an Excellent Result**

After the Settlement Class's attorneys' fees, costs, the general release payment, and administrative costs for the Settlement Class, the Settlement would make a total of $2,155,500.56 net amount available for Plaintiffs, Absent Settlement Class Members, and Settlement Collective Members to claim/receive settlement payments. The 2,954 Settlement Collective Members will receive roughly the equivalent to the total estimated overtime wages they would stand to recover if they were proven to have worked an average of 12.75 unpaid minutes per shift throughout the FLSA's three-year recovery period. *See* Celiesius Decl., ¶ 10. Additionally, the Settlement Class Members will receive shares of the Settlement Class Fund, which is estimated to be approximately 75% the total estimated overtime wages they would stand to recover if they were proven to have worked an average of 12.75 unpaid minutes per shift within the period of September 13, 2019 through May 5, 2023. *Id*. As such, the Settlement represents an extraordinary result for the Settlement Class. *Id*.; *see also Pinon*, 2021 U.S. Dist. LEXIS 249510, at *21 (noting the fact that the amount of damages is less than the damages that some members of the class might hope to recover at trial does not present an obstacle to approval of the settlement agreement); *see In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 325 ("that the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair"). Rather than facing significantly

33

more time in litigation without certainty as to recovery, the Authorized Claimants will receive an immediate financial benefit if the Settlement becomes final.

### 4. __The Claims Presented Inherent Risks__

The Settlement in the instant action is exceptional in light of the litigation risks summarized above in Section II(A). Defendant disputed, *inter alia*, whether Crew Members were compensated for the work underlying their Daily Travel Claims and whether the tasks allegedly performed are *de minimis*. Defendant presented multiple defenses to Plaintiffs' claims, denying any and all liability, and denying the potential for liquidated damages and expanded limitations period for willful violations under the FLSA and state wage-and-hour laws. *See* Celiesius Decl., ¶¶ 11-12. Further, Defendant argued that maintaining multiple Rule 23 sub-classes through trial, consisting of current and former employees in a profession with high turnover, and maintaining a FLSA collective action of 2,954 Settlement Collective Members would pose potential manageability concerns which would favor decertification of the FLSA collective and denial of any contested motions for Rule 23 class certification. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *42; *see also* Celiesius Decl., ¶¶ 11-12.

Given the apparent risks associated with litigating these complex issues, the $3,375,000 recovery accounted for in the Settlement Agreement constitutes an exceptional result for the Settlement Class.

**5.  Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded from Other Employment as a Result**

Class Counsel assumed significant risk undertaking this matter entirely on a contingent fee basis, assuming risk of nonpayment or underpayment. *See* Celiesius Decl., ¶ 23. A "contingency fee arrangement often justifies an increase in the award of attorney's fees." *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *43; *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment).

More importantly, public policy supports Class Counsel's requested fee given that prosecution of this matter allowed for multiple individuals to obtain recovery who may have had relatively small damages on an individual case basis. *See Bozeman v. Port-O-Tech Corp.*, 2008 U.S. Dist. LEXIS 124136, at *24-26 (S.D. Fla. Dec. 18, 2008) (noting that in FLSA cases, the damages may well be relatively small and that, however, does not necessarily require a finding that attorney's fees expended in furtherance of enforcing rights under the FLSA must be correspondingly small; if that were the case, FLSA clients might be expected to have difficulty finding representation, and congressional intent to ensure the enforcement of the provisions of the FLSA would be frustrated).

The duration of this matter further demonstrates the inherent risks faced by Class Counsel in accepting such cases on a contingency-fee basis. Despite Class Counsel's efforts litigating this matter for over two (2) years, they remain uncompensated for the substantial amount of time invested in the action plus the expenses advanced.

Moreover, Plaintiffs' engagement agreement with Class Counsel provided for a 40% contingency fee, but Class Counsel agreed to reduce and accept one-third (1/3) of the Gross Settlement Fund as its attorneys' fee for the action plus payment of its advanced expenses. *See* Celiesius Decl., ¶ 30; *McLendon v. PSC Recovery Sys.*, 2009 U.S. Dist. LEXIS 136999, at *6-7 (N.D. Ga. June 2, 2009) ("Class Counsel contracted [with plaintiff] for a 40% contingency fee with Class Counsel to pay expenses as they were incurred. Because Class Counsel has substantially lowered its fee expectations from the time of the contract with the clients, and from the market rate in other complex litigation, a 33.33% fee award is appropriate.").

### 6. <u>The Requested Fee Comports with Fees Awarded in Similar Cases</u>

Courts within this Circuit have awarded attorney's fees of approximately one-third of a common fund in FLSA and wage and hour cases. *See Duque*, 2016 U.S. Dist. LEXIS 189154, at 3, n.9 (citing *Kimmel v. Venture Construction Co.*, 1:10-cv-01388-RLV (N.D. Ga. 2010) (ECF No. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, 2008 U.S. Dist. LEXIS 126176

(M.D. Fla. Aug. 20, 2008) (awarding 32.35% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.*, No. 4:00-cv-00435-RH-WCS [ECF Nos. 14-15] (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). This is consistent with award in this Circuit of approximately one-third of a common fund in other types of cases. *See, e.g., George*, 369 F. Supp. 3d at 1383 (awarding class counsel 33% of common fund settlement); *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *33-34 (finding award of fees at one-third of common fund "falls within this accepted range and is in accord with this Court's prior fee rulings") (citing *In re Clarus Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 50147 (N.D. Ga. Jan. 6, 2005) (awarding 33.33% of four million dollar settlement fund plus reimbursement of expenses)); *see also Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1297-98 (11th Cir. 1999) (affirming fee award of 33.33% on settlement of forty million dollars).

Plaintiffs' request for approval of Class Counsel's one-third (1/3) fee falls within the range of private practice, where contingency-fee arrangements are often between 30 and 40 percent of any recovery. *See* Celiesius Decl., ¶ 30; *see also Reyes v. AT&T Mobility Servs. Ltd. Liab. Co.*, 2013 U.S. Dist. LEXIS 202820, at *10 (S.D. Fla. June 21, 2013) (approving fees from FLSA collective action settlement, holding "Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit"); *Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786, at

*4 (S.D. Fla. Sep. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."). Accordingly, Plaintiffs' fee request is appropriate and conforms with attorneys' fees awarded in similar cases.

### 7. The Remaining *Camden I* Factors Also Favor Approving the Requested Fee

The remaining *Camden I* factors support granting approval of Class Counsel's fees. As noted above, Class Counsel's experience in complex and sophisticated class action litigation was likely essential in reaching the result achieved here. Since Class Counsel was able to achieve substantial results in the most efficient manner possible without requiring additional protracted and extended litigation, the requested one-third percentage of the settlement should be approved. *See McLendon*, 2009 U.S. Dist. LEXIS 136999, at *10 (Pannell, J.) ("This swift and successful conclusion supports an upward deviation from the benchmark.").

Plaintiffs respectfully request that the Court award Class Counsel's attorneys' fees in the amount of one-third of the $1,250,000 Settlement Fund secured through their efforts. Plaintiffs note that under the Settlement Agreement and this Court's orders, Class Counsel's work on this case will not conclude with the requested final approval order. Class Counsel will continue to work on this case, oversee the Settlement Administration, and work with Class Members to resolve any issues regarding the settlement.

## C. The Expense Request Is Appropriate

Plaintiffs' request for approval of reimbursement from the Settlement Fund of $51,250.00 in litigation costs and expenses advanced by Class Counsel is also reasonable and justified. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *48 (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)).

The actual incurred litigation costs and expenses and also expenses anticipated by Class Counsel for the final fairness hearing is approximately $101,081.35 as of this submission; Class Counsel is only seeking 50.7% of it, in the total of $51,250.00. *See* Celiesius Decl., ¶ 31. Thus, the roughly $50,000 in non-reimbursable actual incurred costs constructively eat away at any fee award by a commensurate amount of costs the firm is absorbing. *Id*. This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution and settlement of the action. "Because Class Counsel has lost the use of this money for nearly two (2) years, the expenses requested are reasonable and necessary." *McLendon*, 2009 U.S. Dist. LEXIS 136999, at *12. The amount sought is reasonable and should be approved by the Court.

## D. The Settlement Administration Fees Should Be Awarded

Finally, Plaintiffs request that the Court approve payment of the Settlement Administrator's $33,328.90 settlement administration fee from the Settlement Fund.

*See* Celiesius Decl., ¶ 33. The Settlement Administration fee is incurred for the benefit of the Settlement Class in carrying out the Settlement.

**VI.    <u>CONCLUSION</u>**

For the reasons set forth herein, the Settlement reached by the Parties, is the product of extensive litigation and arms-length negotiations and has obtained an amount of common fund settlement that is significant and available for the Plaintiffs and all Settlement Class and Collective Members despite the many highly contested issues in this action, eliminating the risks and uncertainties for both sides without a prolonged litigation. Plaintiffs motion should be granted in its entirety so that the Settlement Class and Collective can receive the payments and finality.

Respectfully submitted,

Dated: December 22, 2023          **BROWN, LLC**

*/s/ Edmund Celiesius*
Edmund C. Celiesius (PHV)
Jason T. Brown (PHV)
Nicholas Conlon (PHV)
Eric Sands (PHV)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
nicholasconlon@jtblawgroup.com
jtb@jtblawgroup.com
ed.celiesius@jtblawgroup.com
eric.sands@jtblawgroup.com

*Lead Counsel for Plaintiffs*

Roger Orlando
Georgia Bar No. 554295
**THE ORLANDO FIRM, P.C.**
315 West Ponce De Leon Ave.
Suite 400
Decatur, GA 30030
T: (973) 898-0404
roger@orlandofirms.com

*Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Parties may access this filing through the Court's system.

*/s/ Edmund Celiesius*
Edmund C. Celiesius (PHV)

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1, the undersigned certifies that this motion complies with the font and point selections permitted by L.C. 5.1. This document was prepared on computer using the Times New Roman font (14 point).

*/s/ Edmund Celiesius*
Edmund C. Celiesius (PHV)

41